UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
CHARLES SEXTON II,

                Plaintiff,             **MEMORANDUM & ORDER**

           - against -             No. 13-CV-873 (RJD) (SMG)

AMERICAN GOLF CORPORATION *et al.*,

                Defendants.
-------------------------------------------------------- x
RAYMOND J. DEARIE, United States District Judge:

       From 1999 to 2012, plaintiff Charles Sexton was employed by American Golf Corporation ("AGC") as the superintendent at La Tourette Golf Course in Staten Island. He was paid an annual salary and bonus, but not overtime pay. According to Sexton, in 2007, when new management came to La Tourette, his work responsibilities changed and while he kept his title and salary, his role was effectively reduced to that of an hourly employee. He sues AGC and Carl Collins, the regional director of maintenance at AGC, for unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law ("NYLL"). He also alleges that AGC violated the New York Wage Theft Prevention Act of 2011. The defendants move for summary judgment, arguing that Sexton was at all times an executive employee, exempt from the overtime requirements of the FLSA and NYLL.

       The determination of whether an employee is exempt from the overtime requirements of the FLSA and NYLL is a highly fact-intensive inquiry, and summary judgment is only granted in the rare case where an employee's precise job duties are undisputed. This is not such a case. Sexton's claims rest almost exclusively on his uncorroborated deposition testimony. His 400-page deposition is littered with vague answers, blatant attempts at obfuscation, and hyperbolic claims that his responsibilities were reduced to the "position of janitor." If it was this Court's

province to *decide* issues of material fact, as opposed to merely discerning whether they are absent, this would not be a difficult case. Determining Sexton's precise job duties and assessing the credibility of his testimony is the domain of a jury. Accordingly, for the reasons set forth below, summary judgment is granted in part.

BACKGROUND

Some of the following facts are undisputed. For purposes of this motion, disputed facts are construed in plaintiff's favor.

La Tourette is an eighteen-hole golf course located in Staten Island, New York. Sexton was employed by AGC as the superintendent at La Tourette from 1999 until May 2012, when his employment was terminated. He asserts that he regularly worked more than forty hours per week. At the time of his termination, he was earning $79,000 annually as a salaried employee and was eligible for an annual bonus (which was $6,794 in 2011). Sexton was classified by AGC as an exempt employee and, accordingly, was not paid overtime wages.

The parties dispute Sexton's precise job duties. The defendants rely on his official job description, which provides that the superintendent's "essential duties and responsibilities" include maintaining "the appearance and safety of the course," "treating agronomic issues," "supervising irrigation scheduling and repairs," "managing course preparations" for play, "overseeing maintenance of the golf cart fleet," managing "staff by providing training, direction, supervision, evaluation and corrective action," conducting "monthly staff meetings," hiring and firing staff, developing a budget, and "ordering parts, supplies and equipment." (Kessel Decl., Ex. Q, at 1.) Sexton admits that he consistently performed some of the functions in his job description. For example, Sexton testified that he maintained the appearance and safety of the

golf course, managed tournament and daily play, provided training to staff, supervised staff and assigned work, and sometimes hired new employees. (Sexton Dep. 88-89, 93, 97-104.)

However, Sexton asserts that the job description did not accurately reflect the reality of his job duties and that the functions listed in the job description took up only a small part of his time at work. He claims that over the last five years of his employment, the "superintendent position changed dramatically at La Tourette." (Sexton Dep. 26.) Sexton testified that he spent "significantly more . . . time doing manual labor and janitorial duties than [he] did anything even close to management." (Sexton Dep. 72.) He testified that he did the same tasks as the greenskeepers who were supposed to report to him, and that he "was a worker like everyone else," doing everything from "cleaning urinals to determining what fungicide should be sprayed." (Sexton Dep. 39, 157-58.) Sexton also asserts that his department was understaffed and, as a result of AGC's unwillingness to pay for employee overtime, he was forced to work long hours to complete necessary course maintenance. (Sexton Dep. 158-59.)

Moreover, Sexton disputes the amount of authority and discretion he had even when performing what the defendants contend to be supervisory or managerial tasks. He claims that the employees whom he was supposed to supervise "basically answered to the general manager, not [to him]." (Sexton Dep. 24.) For instance, the general manager took over golf cart repair "completely" and took over "a lot of the control" of training. (Sexton Dep. 94, 97.) Sexton also asserts that any input he had into management decisions was stripped from him. For example, his proposals for the budget were disregarded and his hiring recommendations were not followed. (Sexton Dep. 31-32, 134.) Toward the end of Sexton's time at La Tourette, he was excluded entirely from the hiring of new staff. (Sexton Dep. 152.) In sum, according to Sexton,

3

he "did not have the power or respect . . . to make decisions . . . if [he] wanted to do something or make [a decision] on [his] own, [the power] didn't exist." (Sexton Dep. 72.)

On February 19, 2013, following his termination from AGC, Sexton filed this action against AGC and Collins. The parties completed fact discovery and on May 20, 2015, defendants filed their motion for summary judgment.

DISCUSSION

Summary judgment is appropriate "only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). Courts are "limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A. Executive Exemption from Overtime Laws

The primary dispute in this action concerns the proper classification of Sexton as exempt or nonexempt from the FLSA and NYLL overtime requirements. Subject to certain exceptions, the FLSA, and the analogous provisions under NYLL, require employers to compensate employees who work more than forty hours per week at a rate of one and one-half times their regular rate of pay. See 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. Tit. 12, § 142-2.2. The FLSA's overtime pay provision, however, does not apply to "any employee employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1).[1] "[E]xemptions to the FLSA are

---
[1] The NYLL applies the same exemptions as the FLSA. See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-3.2 ("[A]n employer shall pay employees [overtime wages] subject to the exemptions of section 13 of the Fair Labor Standards Act . . . ."); Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 105 (2d Cir. 2010) ("The NYLL, too, mandates overtime pay and applies the same exemptions as the FLSA.").

4

'narrowly construed'" and "[t]he burden of invoking these exemptions rests upon the employer." Bilyou v. Dutchess Beer Distributors, Inc., 300 F.3d 217, 222 (2d Cir. 2002) (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)).

Whether an individual employee falls within that exemption is "a mixed question of law and fact." Myers v. Hertz Corp., 624 F.3d 537, 548 (2d Cir. 2010). "The question of how the [employees] spent their working time . . . is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law . . . ." Ramos, 687 F.3d at 558 (quoting Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986)) (alteration in original). "Because inquiries into employees' FLSA-exempt status are fact-intensive, even where there has been full discovery, courts are often reluctant to grant summary judgment based on an FLSA exemption." Cheng Chung Liang v. J.C. Broadway Rest., Inc., No. 12-CV-1054 (TPG), 2015 WL 5439178, at *2 (S.D.N.Y. Sept. 15, 2015) (internal quotation marks and citations omitted).

In determining the application of the executive exemption, courts defer to the Department of Labor's regulations defining the FLSA's scope. See Ramos, 687 F.3d at 560-61. The applicable Department of Labor regulations classify employees as "executives" if: (1) they are "[c]ompensated on a salary basis at a rate of not less than $455 per week," (2) their "primary duty is management," (3) they "customarily and regularly direct[] the work of two or more other employees," and (4) they have "the authority to hire or fire other employees" or make "recommendations . . . [that] are given particular weight." 29 C.F.R. § 541.100(a)(1)-(4); see also Mullins v. City of New York, 653 F.3d 104, 107 (2d Cir. 2011). "Consideration of these factors is a highly fact-intensive inquiry to be made on a case-by-case basis in light of the totality of the circumstances, and no one factor is dispositive." Stevens v. HMSHost Corp., No. 10-CV-

5

3571 (ILG) (VVP), 2015 WL 4645734, at *4 (E.D.N.Y. Aug. 5, 2015) (quotation marks and citations omitted).

As to the first factor, there is no genuine dispute of fact as to whether Sexton was "compensated on a salary basis at a rate of not less than $455 per week." An employee is paid on a salary basis if he "regularly receives each pay period . . . a predetermined amount constituting all or part of [his] compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). Over the last two years of his employment, AGC paid Sexton a salary of $79,000 per year or $1,519.23 per week—a rate "not less than $455 per week." 29 C.F.R. § 541.100(a). Sexton claims that his pay was "subject to reduction" because if he did not work 40 hours per week he was not paid in full. However, "the fact that plaintiff [was] required to work and account for . . . forty hours per week" does not "undermine[] the reality that . . . plaintiff regularly received 'each pay period . . . a predetermined amount constituting all or part of his compensation. . . .'" Cooke v. Gen. Dynamics Corp., 993 F. Supp. 50, 55 (D. Conn. 1997) (quoting 29 C.F.R. § 541.118(a)). Sexton also claims that there was a specific incident in March 2012 when he was not paid on days he was absent due to sickness. But isolated absences for sickness do not alter the conclusion that he was paid on a salary basis. See 29 C.F.R. § 541.602(b)(2) ("[T]he salary basis requirement is subject to . . . [an] exception[]" for "[d]eductions . . . for absences . . . occasioned by sickness[.]"); Karropoulos v. Soup du Jour, Ltd., No. 13-CV-4545 (ADS) (GRB), 2015 WL 5124475, at *11 (E.D.N.Y. Aug. 31, 2015) (holding that a plaintiff "must allege more than isolated incidents of deductions in order to create a genuine issue of material fact").

With respect to the second factor, there is a genuine dispute of material fact over whether Sexton's management duties were his "primary" duties. 29 C.F.R. § 541.100(a)(2). An

employee's "primary duty" is his "major or most important duty." 29 C.F.R. § 541.700(a). Although Sexton disputes the extent of his involvement in "management" duties, there is no genuine dispute that he performed *some* such duties. It is clear that he discharged some special responsibilities such as supervising course maintenance and assigning work, and received greater pay than the other employees in his department. Whether those duties were *primary* is far from clear. Existing factual disputes—regarding how Sexton allocated his time, the amount of time he spent on non-exempt work, the extent to which he performed his job under strict supervision, the proper characterization of his responsibilities, and the relative importance of such responsibilities to La Tourette—preclude the conclusion that, as a matter of law, management was Sexton's "primary duty." Additionally, the parties disagree about the extent to which Sexton was stripped of management duties during the last few years of his employment. The credibility of Sexton's claim in this regard is questionable, and his assertions are uncorroborated. Likewise, much of the e-mail evidence suggests that Sexton was performing many important management duties up until his termination. Nonetheless, it is not my role to resolve these factual disputes. Under these circumstances, there are genuine issues of material fact concerning whether Sexton's "primary duty" was management, making summary judgment inappropriate. See Cheng Chung Liang, 2015 WL 5439178, at *3 (holding that "numerous unresolved issues of fact" concerning whether managerial work was the plaintiff's "primary duty" precluded summary judgment); Stevens, 2015 WL 4645734, at *5 (denying summary judgment because it was unclear "whether plaintiff's managerial obligations were truly important enough to his workplace to classify them as his primary duties"); Martinez v. Hilton Hotels Corp., 930 F. Supp. 2d 508, 524-25 (S.D.N.Y. 2013) (finding a dispute of fact as to whether plaintiff's "primary duty" was management); Clougher v. Home Depot U.S.A., Inc., 696 F. Supp. 2d 285, 292 (E.D.N.Y. 2010) (holding that

7

"a more complete examination of the facts" and "credibility determinations" were necessary to determine plaintiff's primary duties).

The third and fourth factors also cannot be resolved on summary judgment because Sexton's authority to direct, hire, and fire other employees is disputed. Under his version of the facts, he did not assign work to employees in his department; he was merely the messenger, with little to no discretion in determining how or when work was to be performed. The defendants, on the other hand, claim that Sexton had the authority to direct greenskeepers and maintenance workers in their daily activities, and Sexton admits this to some extent in his deposition. Additionally, AGC has submitted the declarations of a number of employees who state that they reported to Sexton. Simply, the record is too muddled to resolve this issue.

As for hiring and firing, AGC does not suggest that Sexton had authority to hire or fire other employees, and there is no genuine dispute that Sexton did not have such authority, at least not in the last few years of his employment. The parties do dispute, however, whether Sexton's "suggestions and recommendations" as to hiring, firing, advancement, or promotion were given "particular weight." Sexton asserts that his input was not taken seriously, and he was not even consulted in some circumstances. AGC has identified a number of employees that Sexton recommended hiring, and it is likely that Sexton's repeated assertions that he cannot remember whom he hired will not impress a jury. But on this record, it is not so clear that Sexton's hiring recommendations were followed that I can order judgment as a matter of law. See Trimmer v. Barnes & Noble, Inc., 31 F. Supp. 3d 618, 624 (S.D.N.Y. 2014) (denying summary judgment because there was "no evidence [as to] what weight [plaintiff's] recommendations were given"); Martinez, 930 F. Supp. 2d at 527-28 (holding that a dispute of fact existed as to whether plaintiff had hiring and firing authority).

In sum, there are genuine disputes of material fact as to whether Sexton qualifies as an exempt executive employee under the FLSA and NYLL, and therefore defendants' motion for summary judgment is denied on this ground.

### B. FLSA and NYLL Claims Against Collins

Sexton sues Collins individually for violations of the FLSA and NYLL. The New York Court of Appeals has not answered the question of whether the employer test under the NYLL is the same as under the FLSA. See Irizarry v. Catsimatidis, 722 F.3d 99, 117 (2d Cir. 2013). District courts, however, "have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." Sethi v. Narod, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) (quoting Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010)). As any differences between the definitions of "employer" under the FLSA and the NYLL are "immaterial to the facts of this case," I will analyze whether Collins qualifies as an "employer" under both statutes using the FLSA standard. Kalloo v. Unlimited Mech. Co. of NY, 977 F. Supp. 2d 187, 201 (E.D.N.Y. 2013); see also Schear v. Food Scope Am., Inc., 297 F.R.D. 114, 134 (S.D.N.Y. 2014).

To be held liable as an "employer" under FLSA (and the NYLL), "an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." Irizarry, 722 F.3d at 109. To determine whether an individual exercises operational control in relation to a plaintiff's employment, a court must examine whether the individual exercised "authority over management, supervision, and oversight" of the employer's affairs "in general, as well as evidence under the Carter framework" that reflects the individual's "exercise of direct control over the plaintiff-employees." Id. at 111 (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8 (2d Cir. 1984)). The Carter framework includes the

following four non-exclusive and overlapping factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 105 (quoting Carter, 735 F.2d at 12).

The record clearly shows that Collins was not an "employer" under the FLSA. He did not have the general, overall authority typical of an employer. He has no ownership in AGC, reported to a supervisor, and was not involved in big picture decisions about how AGC is run. (Collins Dep. 14.) The Carter test likewise suggests that he is not an "employer." While Collins was involved in hiring and firing, he did not have the sole power to hire or fire employees. (Collins Dep. 16-17.) He did not control Sexton's or other employees' work scheduled. The fact that Collins sometimes told Sexton what to do does not make him an employer. See Salinas v. Starjem Rest. Corp., No. 13-CV-2992 (AT), 2015 WL 4757618, at *14 (S.D.N.Y. Aug. 12, 2015) ("an individual does not become an employer merely by directing employees to carry out tasks"). Additionally, Collins did not determine employees' rate of pay. (Collins Dep. 17.) There is no evidence that he was involved in keeping employment records. Perhaps most importantly, Collins had no responsibility for Sexton's classification as an exempt employee. (Collins Decl. 9.) Considering the totality of the circumstances, the record is devoid of evidence that Collins was Sexton's employer. Summary judgment is therefore granted and the FLSA and NYLL claims against Collins are dismissed.

   C. New York Wage Theft Prevention Act Claim

Sexton alleges that defendants violated the New York Wage Theft Prevention Act of 2011, NYLL § 195(3), by failing to provide him with (1) annual written notice of his rate of pay, basis of pay, allowances, regular pay day, employer's phone number, name, and physical

address, and (2) pay statements that specify the applicable dates the wages cover and the rate and basis of pay. "Section 195(3) requires an employer to furnish a detailed wage statement to an employee with every payment of wages." Garcia v. JonJon Deli Grocery Corp., No. 13-CV-8835 (AT), 2015 WL 4940107, at *5 (S.D.N.Y. Aug. 11, 2015). An employer must:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

NYLL § 195(3). Additionally, "[f]or all employees who are not exempt from overtime compensation . . . the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." Id.

Sexton has failed to establish that defendants violated the New York Wage Theft Prevention Act. The bi-weekly pay statements issued by AGC to Sexton comply with the first requirement of § 195(3) as they list (i) the dates worked, (ii) Sexton's name, (iii) AGC's name and address, (iv) Sexton's rate of pay, (v) the fact that Sexton is a salary employee, (vi) gross wages, (vii) deductions, and (viii) net pay. (Kessel Decl., Ex. R; Valente Decl., Ex. B.) Sexton argues that the bi-weekly pay stubs do not list "complete contact info for the employer." He is mistaken. The bottom of the pay stub lists AGC's full contact information, as does the voided check at the top of the page.

Additionally, the W-2s issued to Sexton and his bi-weekly stubs comply with the second part of the § 195(3). (Kessel Decl., Ex. D.) Sexton argues that AGC was required to send a written disclosure of pay rates separate from a W-2. Sexton, however, has not identified any legal authority for this argument or a reason why the W-2s do not comply with § 195(3).

11

Accordingly, Sexton's claim for violation of the New York Wage Theft Prevention Act is dismissed.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted in part. The claims against defendant Collins are dismissed in their entirety. The New York Wage Theft Prevention Act claim against AGC is also dismissed. The defendants' motion is otherwise denied.

SO ORDERED.

Dated: Brooklyn, New York
October 8, 2015

/s/ Judge Raymond J. Dearie
_____
RAYMOND J. DEARIE
United States District Judge